UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MARJAY VANCEAH,

                Plaintiff,         Case No.: 18-cv-09418 (ER)

     -against-

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK and
TIMOTHY DENTY,

                Defendants.
-----------------------------------------------------X


## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS

# TABLE OF CONTENTS

I.     PERTINENT FACTS …………………………………………..    1

II.    DEFENDANTS LITIGATION GAMESMANSHIP ……………    2

III.   THE ALLEGED DISCOVERY DEFENDANTS SOUGHT WAS
NOT FOR PURPOSES OF THE CASE, BUT RATHER TO SHOW
PLAINTIFF AS A PROMISCUOUS LIAR WHO WAS NOT HURT,
SHOCKED, OFFENDED OR APPALLED BY RECEIVING THE
PICTURES OF TIMOTHY DENDY'S ANATOMY………………    2

    A.  Defendants Want To Discredit The Plaintiff ………………    2

    B.  Discovery Defendants Sought Or Claim Is Insufficient Is A …   2
        Thinly Veiled Attempt To Discredit And Humiliate the Plaintiff

        1.  Initial Disclosures ………………………………………    3

        2.  Interrogatory Responses ………………………………    5

        3.  Document Requests ………………………………………    6

        4.  Alleged Deficiencies …………………………………    7

        5.  Counsel's Representations ………………………………   10

        6.  Alleged False Affidavits ………………………………   10

        7.  Marjay Vanceah's Multiple Depositions Do Not Demonstrate
           Nefarious Intent ………………………………………..   10

        8.  Amtrak's Renewed Request for a Forensic Examination of
           Ms. Vanceah's Cell Phones ………………………………   14

        9.  Counsel's Representations to the Court ……………………   15

        10. Forensic Analysis of Ms. Vanceah's Cell Phones Was a
           Fishing Expedition ………………………………………..   16

        11. Day Three of Plaintiff's Deposition, Nothing Was Spoiled . 16

        12. Counsel's Further Misrepresentation to Avoid Sanctions … 19

13. Josh Rondau's Testimony …………………………… 19

IV.   ARGUMENT ……………………………………… 20

     THERE ARE NO DISCOVERY ABUSES …………………….. 20

     A.  Rule 37 ……………………………………… 21

     B.  Inherent Power ………………………………… 21


     CONCLUSION ……………………………………… 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur the Dog v. U.S. Merch. Inc.*,
05–cv–958, 2007 U.S. Dist. LEXIS 63885, at *32 (E.D.N.Y. Aug. 29, 2007) ...　23

*Chambers v. NASCO, Inc.*,
501 U.S. 32 at 46 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991) ......................　22

*Daval Steel Prods. v. M/V Fakredine*,
951 F.2d 1357, 1363 (2d Cir. 1991) ………………………………………..　21

*Gelicity UK Ltd. v. Jell–E–Bath, Inc.*,
10–cv–5677, 2013 U.S. Dist. LEXIS 186718, at *12–*13 (E.D.N.Y. Dec. 6, 2013)
(Report and Recommendation), adopted by
2014 U.S. Dist. LEXIS 45573 (E.D.N.Y Mar. 31, 2014) ………………………　23

*Knox v. United States*,
2016 WL 4033086, at *4 (D. Conn. July 27, 2016) …………………………　21

*Mahoney v. Yamaha Motor Corp. U.S.A.*,
290 F.R.D. 363, 367 (E.D.N.Y.2013) ……………………………………..　23

*Murray v. City of Columbus*,
534 F. App'x 479, 485 (6th Cir. 2013) …………………………………　22

*N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*,
432 F. App'x 25, 25 (2d Cir. 2011) ……………………………………　22

*Oliveri v. Thompson*,
803 F.2d 1265, 1272 (2d Cir.1986) …………………………………………　23

*Revson v. Cinque & Cinque*,
221 F.3d 71, 78 (2d Cir.2000) ……………………………………………..　23

*Shangold v. Walt Disney Co.*,
2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) …………………………　21

**Periodicals**

Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse
535 (6th ed. 2020) …………………………………………………………　22

**Statutes**

Rule 26(g) ……………………………………………………… 23

Federal Rule of Civil Procedure 37 ……………………………… 20, 23

Fed. R. Civ. P. 37(b)(2)(A) ……………………………………… 21

Rule 37(b)(2)(A) …………………………………………………… 21

# I.   PERTINENT FACTS

This is a simple case. Timothy Dendy, Chair of the Union at National Railroad Passenger Corporation d/b/a Amtrak, sends two unsolicited pictures of his penis to Marjay Vanceah, a coach cleaner. Ms. Vanceah was on probation at the time she received the unwarranted pictures of Mr. Dendy's anatomy. Fearful of losing her job, Ms. Vanceah waited until she was no longer on probation to report the incident to Amtrak's EEO office.

Once the complaint was made, Amtrak failed to suspend, terminate, or otherwise discipline Mr. Dendy. Amtrak even failed to suspend Mr. Dendy while they investigated.

After reporting the incident, and further rejecting Mr. Dendy's continuous sexual advances, Ms. Vanceah was subjected to false allegations, assault, and a cancellation of her overtime. Mr. Dendy orchestrated the retaliatory behavior that Ms. Vanceah was subjected to, as he was able to get his coterie of friends and co-workers to participate in getting Ms. Vanceah terminated from Amtrak.

After being subjected to an onslaught of falsehoods, the final allegation involved a co-worker, where Ms. Vanceah and the co-worker were equally at fault. Ms. Vanceah was terminated, the co-worker was not.

This started as a simple case, the defendants have now made it complex.

## II.    DEFENDANTS' LITIGATION GAMESMANSHIP

It is understood that the purpose of discovery is to facilitate the search for truth. But not everyone wants the truth to surface. Too often, the lopsided imbalance of discovery costs and burdens on the plaintiffs in complex litigation hinders the pursuit of justice.

Many defendants' lawyers are skilled at leveraging discovery requests to trigger sanctions. They create a perception of bad faith by inundating courts with motions to compel additional discovery and motions for sanctions based upon speculation that responsive material is being withheld with nefarious intent. The lawyer's goal is to stoke a judge's anger, accuse the other party of obstructing justice and seek sanctions. Some have called this practice "litigation by sanction" because, by racking up enough sanctions, the merits of the case might never be reached at all.

It is axiomatic, regardless of how well one tries to comply with discovery demands, there can almost always be allegations that a page, document or flash drive has not been produced. A violation appearing to be in "bad faith" may be from a mistake, misunderstanding, or inability to adhere to voluminous or complex production orders. The notion of having all information on a subject is almost unattainable.

## III.    THE ALLEGED DISCOVERY DEFENDANTS SOUGHT WAS NOT FOR PURPOSES OF THE CASE, BUT RATHER TO SHOW PLAINTIFF AS A PROMISCUOUS LIAR WHO WAS NOT HURT, SHOCKED, OFFENDED OR APPALLED BY RECEIVING THE PICTURES OF TIMOTHY DENDY'S ANATOMY

### A. Defendants Want To Discredit The Plaintiff

Based on information the defendants have received during discovery including having looked through the plaintiff's cell phones, and the fact that plaintiff and Mr. Dendy had a one-time

sexual encounter, Defendants have said, intimated, hinted, and implied that the plaintiff, was deserving of the anatomy pictures she received. The defendants' questioning of the plaintiff during four days of deposition testimony, made it clear that their goal was to treat her like the world treated rape victims before the end of the twentieth century. They wanted to go through the plaintiff's life and introduce the plaintiff's sexual history as evidence during this case. There is a reason rape shield laws were enacted in the late twentieth century, which limits the ability of the defendant's counsel to introduce the accuser's sexual history as evidence during a trial, and that was to prevent the accuser from being discredited by information that is not relevant to the defendant's guilt or innocence. Although, this is not a rape case, the defendants' counsel are employing the same kind of strategy that the defendants' counsel had done decades before.

The plaintiff has provided all discovery in this case regarding the allegations and claims in the complaint that is before this Court. A showing of the discovery defendants sought tells the Court the tale of the strategy they have invoked.

### B. Discovery Defendants Sought Or Claim Is Insufficient Is A Thinly Veiled Attempt To Discredit And Humiliate The Plaintiff

### 1. Initial Disclosures

Defendant states that it is missing the remainder of the texts produced in the plaintiff's internal complaints to Amtrak "and other potential key evidence." Defendant never identified specifically, what "other potential key evidence" it was seeking. The catchall phrase is typical of a fishing expedition when defendants are looking for anything and everything they can use, whether relevant to the case or not, to discredit the plaintiff. In fact, when providing this Court with the copy of a Supplemental Amtrak Police Report, to undoubtedly show that the Amtrak Police Officer was given "over two hundred messages that [Ms. Vanceah] provided," the defendant sought to have this Court view Ms. Vanceah of not worthy of belief because she

allegedly had "more than just a professional relationship" [with Mr. Dendy] as the Amtrak Police Officer also concluded.

The text message exchange that the Amtrak Police Officer cites in his report is taken out of context and clearly with a view to show that Ms. Vanceah could not possibly say that Mr. Dendy was sexually harassing her if she was in a relationship with him and if she was asking Mr. Dendy to buy her underwear and perfume. The Amtrak Police Officer drew his own biased conclusion against Ms. Vanceah and closed the investigation. In her deposition, Ms. Vanceah explained these text messages requesting underwear and perfume that the Amtrak Police Officer referenced in his report.

> Marjay Vanceah Deposition April 13, 2021, page 322 ll. 22-25, page 323, ll. 2-25:
>
> Q. And you also sent him heart emojis and things like that?
>
> A. Heart emojis is - - emojis doesn't hold value to anything. I feel like you're trying to insinuate that me and this man was in a relationship because that's how I feel that's where it's going. Am I right?
>
> MR. PAWAR: You can't ask questions.
>
> THE WITNESS: I can't ask questions?
>
> Q. And also if you didn't think that you were in a relationship with him why would you ask him to buy you underwear?
>
> A. He kept making me work overnight. He told me I had to work overnight, and I said I have to take a shower and I don't have no change of clothes so I would need underwear.
>
> Q. But you told him to buy you underwear; correct?
>
> A. Right because I was working.

Q. You didn't ask him to take a break so you could go to the store, you asked him to buy you underwear.

A. He can't give me a break. I'm not allowed to leave the yard.

Q. He's not authorized to give you a break; correct?

A. No.

Marjay Vanceah, April 13, 2021, page 328, ll.5-9:

Q. Did you also ask Mr. Dendy to purchase luxury shoes for you and perfume?

A. Luxury shoes for me? Dendy asked me what I wanted for my birthday or Christmas, or something like that, and that's how I sent him the picture.

Marjay Vanceah, April 13, 2021, page 429, ll. 21-25:

Q. These weren't the shoes that you asked him to buy you for Christmas as you testified earlier?

A. He asked me what did I want for Christmas and I sent him a picture of the perfume and I sent him these pictures of shoes I was looking at. I didn't tell him to buy this, but that. He asked what I wanted for Christmas.

## 2. **Interrogatory Responses**

Defendants refer to no documents being attached to the interrogatory responses Nos. 4 and 5, which was inadvertent, not intentional.

Plaintiff's claim in this lawsuit is that Mr. Dendy sent her the anatomy pictures on her phone with the (323) area code, not on any other phone or device. Therefore, there was no cause or good faith basis to call for the production of *all* mobile devices, *dates of use*, *each device*, unless someone is picking through the plaintiff's life to attempt to find something other than what is related to the allegations of Mr. Dendy sending the anatomy pictures to her phone designated

with the (323) area code. The only conclusion to be drawn from this interrogatory is that it is a fishing expedition into the plaintiff's personal and private life.

### 3. **Document Requests**

As was stated above, something may look a certain way, but that is not the way it is. Thus, the alleged violation with respect to responses for document Requests 6, 7 and 14 may have been a mistake or a misunderstanding by the plaintiff as she sought to provide counsel and ultimately the other side with requested information.

The only document responsive to Request No. 14 was the picture of Mr. Dendy's anatomy. A copy of the Complaint is attached hereto as **Exhibit "A."** Based on a reading of those referenced paragraphs of the Complaint, plaintiff's response was responsive to the request.

> Request No. 43: Produce all documents concerning the allegations in Paragraph 30 of the Complaint that "[i] mid-December 2017 [Dendy] sent a picture of his penis to [Plaintiff] via cell phone" and "[she] showed the picture to co-worker Lawrence Sealy," Including, but not limited to, a copy of the message.
>
> **Response: Plaintiff has previously produced the text messages requested herein, along with a picture of Dendy's penis.** There are no documents regarding plaintiff's conversation with Lawrence Sealy.

Ms. Vanceah testified at her deposition that the penis pictures did not have any text on the picture, and that the conversation with Lawrence Sealy was oral.

Ms. Vanceah's response to Request No. 48 was responsive based on what was articulated in the Complaint at Paragraph 34,

> 34. Ms. Vanceah spoke to Amtrak EEO. Denty did not deny that he sent the picture, he said that it was sent accidentally. He said it was intended for his Dominican girlfriend. During the EEO investigation, Jennifer communicated that she did not want to be involved in any of this, and plaintiff has not received any overtime from Jennifer up to this date. She filed grievance with Shelton Gray. He never filed the grievance. Gray said it was not filed because it was not notarized. She later learned that Denty told Gray not to file the grievance. Gray is no longer a union representative.

It was clear from Request No. 58 that defendant's counsel wanted to obtain all of the plaintiff's electronic storage media in order to perform a deep dive into the plaintiff's private and personal life. Given that request, my objection was more than appropriate.

Defendant's Document Request No. 60 was entirely unreasonable, non-specific, and attempted to cast a wide net over the discovery process, which is a perfect example of why the term is called fishing expedition. Therefore, my objection was most appropriate.

### 4. Alleged Deficiencies

The alleged deficiencies in defendant's counsel's letter of November 18, 2019, were later supplemented by the plaintiff. The verifications were sent and documents that were not attached to previous discovery requests were provided. My previous objection to identifying plaintiff's cell phones in an effort to delve into the plaintiff's private life remained in force, and rightly so.

The June 1, 2020, letter referenced incomplete responses in addition to having plaintiff confirm she had searched for all responsive documents, and if any materials previously existed but were deleted, to explain why they were deleted. Plaintiff's responses were not incomplete. As regards any deletions, plaintiff has stated that any deletions were prior to filing a lawsuit. She deleted the pictures of Mr. Dendy's anatomy because she did not want those pictures on her phone. She found those pictures to be disgusting and vulgar. Not to delete those pictures the moment she received them, would say more about her than about Mr. Dendy.

The June 14, 2020, letter had six points that spoke to areas that allege the plaintiff fell short in her Supplemental Responses. First, any additional text messages between Ms. Vanceah and Mr. Dendy had nothing to do with the allegations that were the basis of Ms. Vanceah's complaint. Second, plaintiff explained at her deposition that although she has a personal phone and a business phone she does not significantly differentiate between them, as if one phone goes

dead, she just picks up the other phone. So, there were some exchanges on both phones between plaintiff and Mr. Dendy, but again, none on the second phone that referred to the allegations. Third, plaintiff did make a search of her personal cell phone and she found no other messages other than what was already in defendants' possession. Ms. Vanceah did not back-up her phone at the time she made the internal complaint to Amtrak's EEO officer, nor was she required to do so. Fourth, the Response to Request Nos. 33-36, 43, and 45 was that "Plaintiff has no further texts, emails or other documents related to this request for "verbal" statements made by Denty."

Fifth, there was no text that accompanied the penis pictures. What Ms. Vanceah was referring to in her hand-written statement to the Amtrak Police, when she said Dendy sent, "Stop acting like you don't like this," was what Mr. Dendy sent right after he sent the penis pictures. There was no text with the images of his penis. Ms. Vanceah did not have that text message. What Ms. Vanceah's hand-written statement given to the Amtrak Police also makes clear is that Ms. Vanceah deleted the anatomy photos long before she filed her lawsuit. Therefore, it was disingenuous for the defendants to lead this Court to believe that Ms. Vanceah deleted the anatomy photos after her lawsuit was filed. She deleted those photos, prior to the lawsuit being filed, just as Mr. Dendy deleted the penis photos from his phone, prior to the lawsuit. The defendant's request for deleted documents during the course of the litigation was a fabrication and an attempt to further portray Ms. Vanceah as deceitful and a fraud.

To be clear, plaintiff provided documents to the defendants. She provided a single picture of Mr. Dendy's anatomy because that was all she was able to retrieve. She provided text messages related to overtime, because her claim is that she was receiving overtime and then when she spurned Mr. Dendy's sexual advances he took the overtime away from her. Ms. Vanceah also provided text messages she had with Jennifer Montgomery, which defendant says contradicts

that she said all communication was verbal. Ms. Vanceah did not contradict herself. She said that the verbal communication with Jennifer Montgomery was regarding when Jennifer was angry with Ms. Vanceah for getting her [Jennifer Montgomery] involved in "Dendy's mess." Ms. Vanceah produced texts with Jennifer Montgomery where the subject of the texts was overtime.

On July 10, 2020, defendant sent a third alleged deficiency letter calling for an inspection of Ms. Vanceah's personal phone. There was nothing mysterious about how Mr. Dendy's anatomy photos were sent to Ms. Vanceah. Mr. Dendy texted those photos to Ms. Vanceah on her phone with area code (323). The defendant's efforts to examine Ms. Vanceah's other phone, when the penis pictures were not sent to any other phone belonging to Ms. Vanceah, was a pure fishing expedition to see what, if anything, they could find to further sully the plaintiff's reputation and to undermine her claims.

Defendant requested a police report to show proof that Ms. Vanceah lost one of her cell phones, her business phone, with area code (908), which was not the phone that Mr. Dendy sent pictures of his anatomy. There was only one means of transmission of the anatomy photos to Ms. Vanceah and that was Mr. Dendy sending the photos to her via text on the phone with area code (323). Defendant was asking plaintiff to go back and check for documents that were in no way related to the claims.

On July 29, 2020, I sent a letter to defendant's counsel. Counsel quotes what I said in the letter out of context. I did object to invading Ms. Vanceah's privacy by going through her phone to look at her entire life and view matters that are not related to the instant claims. As I stated earlier, this is a simple case; a man sends a woman pictures of his penis. This is a fact. Defendant's counsel is insensitive. The process defendant was taking Ms. Vanceah through was not a discovery process but was and still is a further form of harassment. Mr. Dendy told Ms.

Vanceah that she would not be believed, and nothing would happen to him because Amtrak does not like troublemakers. Mr. Dendy was prescient, and he was right.

As I stated at a pre-motion conference, I am happy to provide and have provided everything related to the claims herein. Anything outside of those claims I have objected to.

### 5. Counsel's Representations

As of the September 18, 2020, telephone hearing with this Court, everything had been provided to defendants. Defendant sought to question my veracity by arguing that I have not turned over the totality of texts between Ms. Vanceah and Mr. Dendy. The request for an examination of the plaintiff's second phone was a fishing expedition because the second phone did not contain pictures of Mr. Dendy's penis. It was clear that defendant was exercising a time-tested strategy of delay, deny, and distract.

### 6. Alleged False Affidavits

Ms. Vanceah owns two cell phones, one with the area code (323) which was primarily her personal phone and one with the area code (908) which was used less often as her business phone. She has a right to use the two phones as she sees fit; it could be a matter of convenience. The affidavit signed by Ms. Vanceah did not contradict her interrogatories because the subject of her claims concern sexual harassment and retaliation from Mr. Dendy.

### 7. Marjay Vanceah's Multiple Depositions Do Not Demonstrate Nefarious Intent

(a) Ms. Vanceah testified that she does not distinguish between the two phones. **See Exhibit "B" (Marjay Vanceah Deposition, November 10, 2020, and November 18, 2020, p.233, ll. 2-25)** Ms. Vanceah did not have any other messages between her and Jennifer Montgomery.

Ms. Vanceah is not unlike many people who have multiple phones. It is her prerogative to use her phone when one goes dead. She was not being deceptive. Defendant's counsel was

searching for communication between Jennifer Montgomery and Ms. Vanceah regarding overtime because Ms. Montgomery would contact Ms. Vanceah to offer her overtime and then the overtime stopped based on Mr. Dendy's instruction. Ms. Vanceah made clear in her deposition that she did not have any earlier text exchanges with Ms. Montgomery because Ms. Vanceah did not have Ms. Montgomery's phone number. Defendant's counsel is in possession of all the texts regarding Jennifer Montgomery whether on the (323) phone or the (908) phone.

(b) Ms. Vanceah communicated with Mr. Dendy on both her phones, as she used them interchangeably. She knew that anything related to her claims was on the phone with the (323) area code. Any other communication with Mr. Dendy on the phone with the (908) area code involved, for instance, when Mr. Dendy told Ms. Vanceah that he and Terrance Rowland were having a big party and they were looking for women to provide bottle service. Ms. Vanceah sent him a picture of herself in shorts in keeping with the bottle service theme. So, defendant's counsel's attempt to show that Ms. Vanceah is hiding information on the second phone, is a red herring, because Ms. Vanceah does not deny she communicated with Mr. Dendy on both phones.

There were no questions developed and no questions asked by defendant's counsel regarding whether use of the other phone pertained to her claims.

(c) Defendant's counsel attempted to impeach Ms. Vanceah's testimony with the affidavit she signed regarding both phones. Ms. Vanceah never had a personal conversation on the (908) number with Mr. Dendy, although she communicated with him on that phone. Ms. Vanceah has repeatedly said that the anatomy pictures were on the (323) number. All efforts to badger her and call her a liar are quite clear. **See Exhibit "C" (Marjay Vanceah Deposition, November 18, 2020, page 251, ll.22-25, page 252, ll. 22-25, page 255, ll.16-26, page 256, ll. 2-8)**

(d) Defendant's counsel further attempts to impugn Ms. Vanceah's character by

dramatizing that she says she lost her (908) phone and then says the (908) phone was stolen. There is a phrase in the English lexicon that says, "same difference." The phrase is used to say that two things are not really different in any significant way. Whether Ms. Vanceah lost the (908) phone or the (908) phone was stolen, the bottom line is that she no longer has the (908) phone.

(e) Defendant's counsel inquired whether Ms. Vanceah backed-up any of her data from the phone. She said she did not. Nor was she required to prior to filing the lawsuit. Defendant's counsel wants to show Ms. Vanceah as being irresponsible and manipulative because she did not backup her cell phones prior to filing a lawsuit. **See Exhibit "D" (Marjay Vanceah Deposition, November 10, 2020, page 84, ll.17-19)**

(f) Defendant's counsel wants to give this Court the impression that again Ms. Vanceah is being deceitful when she testifies that she took screenshots of texts but did not backup the texts. Taking a screenshot of texts is different from backing-up texts. Screenshots let you capture exactly what you are seeing on your screen. Backups can be performed using a person's iCloud or their computer. Ms. Vanceah testified she did not backup her texts.

(g) Contrary to Defendant's counsel's inquiry about the deletions to her phone, any deletions were made prior to the lawsuit. Once defendant's counsel heard the word deletions, a scenario was created to give the impression that Ms. Vanceah deleted many texts and photographs from her phone. Actually, when Ms. Vanceah testified about deletions, she was testifying that any deletions were made after she filed her internal complaint with Amtrak, not after the lawsuit was filed. Defendant's counsel was attempting to confuse Ms. Vanceah. **See Exhibit "E" (Marjay Vanceah Deposition, November 18, 2020, page 247, ll. 17-25, page 248, ll. 2-4, 15-25)**

Had defense chose to follow up by asking Ms. Vanceah what pictures and texts were deleted, they would have learned that she deleted family photos and old pictures of herself. But defendant's counsel was never looking for the truth or justice, counsel for the defendant was merely looking to discredit Ms. Vanceah.

(h) Any messages that Ms. Vanceah was looking at on her phone during her deposition were duplicates of what defendant's counsel was showing her on the screen and what they were asking her about. Ms. Vanceah provided all the messages and defendant's counsel had them in her possession.

(i) Ms. Vanceah did not contradict herself. She provided all texts.

(j) Again, defendant's counsel was trying to confuse Ms. Vanceah. Defendant's counsel produced at Ms. Vanceah's deposition an exhibit of a text message that had the name of Al Canon, an Amtrak employee. Ms. Vanceah, in examining the exhibit, thought it was a text between her and Mr. Dendy. She sees that it is a text from Al Canon and says so. She is saying that there were more text exchanges leading up to what defendant's counsel showed her in the exhibit before they produced the text from Al Canon, and Ms. Vanceah wanted to see the context of the text message exchange prior to getting to Al Canon's text so that she could respond to the question. Ms. Vanceah testified that she did not provide any texts related to Al Canon because she did not provide Al Canon with any documents or texts regarding her complaint against Mr. Dendy. And so it is in an accusatory tone that defendant's counsel asked Ms. Vanceah if she wanted to retract her testimony. **See Exhibit "F" (Marjay Vanceah Deposition, November 18, 2020, pages 237-238, 241, ll.2-9, page 249, ll. 6-20)**

(m) Ms. Vanceah's communication with all Amtrak employees, unless it is related to her

claims, is not discoverable. Her text messages with all Amtrak employees where the exchanges were social and not related to Ms. Vanceah's claims did not have to be produced, other than to embarrass Ms. Vanceah.

(n) A clear flagrant attempt to embarrass and harass Ms. Vanceah was when during her deposition defendant's counsel showed Ms. Vanceah, which defendant's counsel found from the forensic analysis of her phone, a sex video of her friend "Dougie" receiving fellatio from his wife. Apparently, Dougie's wife sent the video to Ms. Vanceah. This sexual video had absolutely nothing to do with the case. Moreover, defendant's counsel sought to ask Ms. Vanceah questions that [Ms. Vanceah] "appears to have claimed she was pregnant with and aborted [Dougie's] child. I vehemently objected to that line of questioning and instructed Ms. Vanceah not to answer those questions. **See Exhibit "C" (Marjay Vanceah Deposition April 21, 2021, page 528, ll. 6-25, page 529, ll. 2-25, 554, ll. 12-25, page 555, ll. 2-23, page 574, ll. 6-8, pages 575-577)**

8. **Amtrak's Renewed Request for a Forensic Examination**

Defendants still wanted to invade the plaintiff's privacy and get to her phones by sculpturing testimony that gave the impression plaintiff was being untruthful, that she had deleted messages and withheld messages, but nothing was further from the truth. At one point defendant's counsel wanted to know why Ms. Vanceah would not keep a disgusting picture of Mr. Dendy's penis on her phone. When asked a question by defendant's counsel about the basis of her complaint, Ms. Vanceah said that the basis of her complaint was Mr. Dendy retaliating against her because she did not want anything to do with him. Ms. Vanceah is not a lawyer. **See Exhibit "H" (Marjay Vanceah Deposition, April 13, 2021, page 315, ll015025, page 316, ll. 2-13)**

This case is about the penis pictures and everything that stemmed from that incident once Ms. Vanceah reported Mr. Dendy. Mr. Dendy sent the penis pictures because he thought he

could do what he wanted with impunity. When Ms. Vanceah complained to Amtrak about what Mr. Dendy was doing to her, he retaliated against her. Accordingly, there was nothing contradictory in Ms. Vanceah's complaint. Furthermore, as stated above, Ms. Vanceah did not delete screenshots of texts with Mr. Dendy during the litigation. Defendant's counsel was creating the impression and mischaracterizing Ms. Vanceah's testimony because they wanted to take a look in her phones.

### 9. **Counsel's Representation to the Court**

Again, Defendant's counsel has sought to calling me a liar. Counsel for the defendant insinuates that Ms. Vanceah sent Mr. Dendy a picture of a woman's bare buttocks, to give the impression that Ms. Vanceah asked for the penis pictures to be sent to her. The fact is, that the picture of the woman who was in shorts had nothing to do with the unsolicited erect penis pictures from Mr. Dendy.

Ms. Vanceah sent Mr. Dendy a picture of a woman's buttocks in shorts. This picture was sent well before Mr. Dendy sent the penis pictures. Ms. Vanceah sent the woman's buttocks in shorts as a response to Mr. Dendy asking her, why she was talking to another male co-worker. Ms. Vanceah responded with the picture of the woman, similar to a meme. A meme is an idea, behavior, or style that spreads by means of imitation from person to person within a culture and often carries symbolic meaning representing a particular phenomenon or theme. The picture of the woman's buttocks in shorts, in the context of the conversation between Ms. Vanceah and Mr. Dendy regarding who she was talking to, was Ms. Vanceah telling Mr. Dendy to "kiss her ass." Mr. Dendy was still trying to be in a relationship with Ms. Vanceah and she was rebuffing his advances.

Despite my protestations, this Court ordered Ms. Vanceah to produce two phones for forensic analysis. Both Ms. Vanceah and/or I was ordered to pay for the forensic analysis that cost approximately $12,000.00.

**10. <u>Forensic Analysis of Ms. Vanceah's Cell Phones Was a Fishing Expedition</u>**

Defendant's forensic expert, Consillo did not produce the penis pictures and text that followed the penis pictures.

(a) Defendants' counsel are in possession of Dendy's text messages just as they are in possession of Ms. Vanceah's because both parties produced all of their text messages to Amtrak's EEO officer prior to any lawsuit being filed. Ms. Vanceah stated that she no longer had the same (908) phone that she had when these incidents were occurring with Mr. Dendy.

(b) The forensic analysis produced texts from December 14, 2017 to February 2, 2018. Depending on the texts defendant's counsel is referring to, not all of them were related to the incidents in the complaint.

(c) Ms. Vanceah having text exchanges with Dougie has nothing to do with Ms. Vanceah's claims.

(d) At his deposition, Mr. Dendy admitted that he sent a picture of his penis to Ms. Vanceah. **See Exhibit "I" (Timothy Dendy Deposition June 15, 2021, page 69, 23-25, 70, ll. 4-7)** He denied that the photo Ms. Vanceah produced was his penis, but he conceded he sent her a penis picture. **See Exhibit "J" (Timothy Dendy Deposition June 15, 2021, Page 77, ll. 2-18)**

Surprisingly, Consillo, the forensic experts did not find the one penis picture that even Mr. Dendy admitted to sending when they conducted the forensic analysis of Ms. Vanceah's phone.

**11. <u>Day Three of Plaintiff's Deposition, Nothing was Spoiled</u>**

Defendants have conceded that Mr. Dendy's penis pictures are a central piece of evidence to the case.

(a) Ms. Vanceah does not know anything about iCloud. She does not have that technological knowledge. So, any questions about whether her phone, the one Mr. Dendy sent his penis pictures to, was connected to an iCloud, she does not know.

(b) Ms. Vanceah testified that she brought her cell phone to an electronics store near her house to attempt to retrieve the penis pictures to show Shazrae Mian, the Amtrak EEO Officer, who was conducting the Amtrak internal investigation into Ms. Vanceah's allegations. Ms. Vanceah spoke to someone named Josh and after he had her phone, was able to get one penis picture. Ms. Vanceah did not see Josh during the course of this lawsuit. She saw Josh prior to filing the lawsuit. Defendant's counsel is confounding the chronology of the events.

(c) Ms. Vanceah explained why she deleted Josh's text and such deletion was before the filing of this lawsuit. Josh's contact information was deleted along with the text message he sent her because the store was no longer open, and his phone number was no longer working. She asked Josh to assist with retrieving the penis pictures when she filed her internal complaint with Amtrak, not after the lawsuit was filed. Defendant's counsel has surmised that Ms. Vanceah's deletion of Josh's information and text was during the filing of the lawsuit and defendant's counsel has purposely left that ambiguity open for this Court to find that Ms. Vanceah deleted Josh's information and his text after this lawsuit was filed.

(d) Ms. Vanceah explained at her deposition why she mentioned that Mr. Dendy sent two penis pictures. **See Exhibit "K" (Marjay Vanceah Deposition April 13, 2021, page 350, ll. 3-25)**

Ms. Vanceah deleted offensive and pornographic photos sent to her phone by Mr. Dendy right after he sent them before she filed her lawsuit. Ms. Vanceah had to retrieve at least one penis photo to give to Shazrae Mian because of her complaint against Mr. Dendy with Amtrak. Shazrae Mian had failed to take Ms. Vanceah's claims seriously because of her feelings that Ms. Vanceah and Mr. Dendy were in a relationship. Shazrae Mian's deposition testimony that zero tolerance in the workplace at Amtrak as regards Ms. Vanceah's internal complaint against Mr. Dendy for sending pictures of his penis to her, somehow "depends." **See Exhibit "L" (Shazrae Mian Deposition, June 24, 2021 page 19, ll. 21-25, page 20, ll. 2-7)**

Ms. Vanceah produced all text messages to Shazrae Mian because Amtrak has copies and confronted Ms. Vanceah with those copies at her deposition. Ms. Vanceah did not intentionally delete the photos to avoid producing them to support her claim. She deleted the photos once, after Mr. Dendy sent them to her and then again, after Josh found the picture for her. Both times she deleted the penis photos was prior to the filing of the lawsuit because the pictures were offensive.

Two pictures of the same penis is overkill. One copy of a penis picture is indeed enough. Even Mr. Dendy admits to sending the penis photo. It is not surprising Mr. Dendy denies sending the one penis photo that Ms. Vanceah had but admits he did send her one.

There is no spoilation. Defendant's counsel was claiming that Ms. Vanceah was lying about there being a Josh and the electronics store where she went to try to recover the penis pictures from her phone. At a court conference this Court directed that I provide information related to Josh and the electronics store. Contrary to defendant's counsel's recitation, at this Court's direction, I located information regarding Josh and provided this Court and counsel with

that information in a letter to this court dated September 16, 2021. **See Exhibit "M" (Letter to Hon. Edgardo Ramos dated September 16, 2021)**

In a follow-up letter to counsel dated September 20, 2021, I advised them that I spoke to Josh, and I provided his telephone number. **Exhibit "N" (Letter to Counsel for the Defendants Supplying a Telephone Number for Josh dated September 20, 2021)**

Although, perhaps surprising to defendants' counsel, it was now clear to them that Ms. Vanceah was not lying about the electronics store or the person Josh who was able to retrieve the penis photo.

### 12. Counsel's Further Misrepresentation to Avoid Sanctions

This is the third time defendant's counsel has called me a liar. After thirty-seven years of practice, I still enjoy a good reputation in the legal community with the bench and bar, so there is no need for me to try to avoid sanctions. Sanctions are not warranted here because there was no malfeasance by me or my client.

Counsel for the defendants were given the direct cell number for Josh. There was no problem when I spoke to Josh asking him whether he had documents or invoices on this matter. He said he would look and get back to me.

When counsel for the defendants spoke to Josh because they thought my client was lying about a "Josh," they were intimidating and threatening him. They accused him of illegal practices, and he said he would get a lawyer. **See Exhibit "O" (Josh Rondau Deposition October 25, 2021, page 26, ll. 15-25, page 40, ll. 18-24, page 43, ll. 5-18, page 45, ll. 9-13, page 46, ll. 21-25, page 47, ll. 2-9)**

### 13. Josh Rondau's Testimony

After the intimidating encounter Josh had with counsel for the defendants, as he stated in his deposition, it is little wonder that he would change his story about exactly what he did for Ms. Vanceah.

It is this very audacious, bold, intimidating, and manipulative litigation that makes plaintiffs and witnesses in sexual harassment and retaliation cases fearful of coming forward. Family and friends tell them to let the issue drop because no one is going to believe you and you cannot fight a major corporation.

Amtrak seeks sanctions primarily to intimidate Ms. Vanceah and by extension her counsel. They know that they cannot get around the fact that Mr. Dendy sent Ms. Vanceah unsolicited and unwarranted pictures of his erect penis and the best defense they have is to call the plaintiff a sexualized liar, her counsel a charlatan, and give the impression that they have been wronged.

As long as they can continue to focus on that story, that is their best defense. And if the Court cannot see through the quagmire, then Ms. Vanceah will realize, Mr. Dendy was right.

## IV.    ARGUMENT

### THERE ARE NO DISCOVERY ABUSES

The defendant's motion asks this Court to impose discovery sanctions on plaintiff and plaintiff's counsel pursuant to Federal Rule of Civil Procedure 37 and the court's inherent powers. Defendant alleges that plaintiff and plaintiff's counsel have provided contradictory testimony, false affidavits, and incomplete discovery responses. In other words, the defendants alleged that Ms. Vanceah had essentially committed perjury in several respects during deposition testimony and also had improperly withheld documents regarding text messages that should have been produced in response to the Defendant's requests for production.

The Court should deny the defendant's motion as far as the motion seeks sanctions pursuant to Rule 37 because a prerequisite of the rule - - that the transgressing party must have defied a prior order - - was not met. In this action the plaintiff and plaintiff's counsel have not defied a prior order.

## A. <u>Rule 37</u>

If a party "fails to obey an order to provide or permit discovery," a district court may sanction the transgressing party in numerous ways of varying severity, up to and including dismissing the action. Fed. R. Civ. P. 37(b)(2)(A). A court may impose sanctions pursuant to Rule 37(b)(2)(A) only when the transgressing party has violated a prior court order. *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991). In the instant case the defendant has to concede that plaintiff and plaintiff's counsel did not violate such an order. The defendant argues that the plaintiff has committed a plethora of discovery abuses and that sanctions are appropriate. No such abuses exist. Plaintiff has provided and defendant is in possession of all the texts that are the subject of her claims in this lawsuit. Plaintiff has no other documents or texts. The fact what the defendant has in its possession, from their perspective, may contradict the plaintiff's testimony, does not mean that she has failed to provide discovery documents.

## B. <u>Inherent Power</u>

A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court. *See Knox v. United States*, 2016 WL 4033086, at *4 (D. Conn. July 27, 2016); *Shangold v. Walt Disney Co.*, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006). "Sanctions for fraud are warranted if it is established by clear and convincing evidence that [a party] has sentiently set in motion some unconscionable scheme

calculated to interfere with the judicial system's ability impartially to adjudicate the action." *N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.,* 432 F. App'x 25, 25 (2d Cir. 2011) (cleaned up). Thus, clear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power.

Contrary to defendant's argument, there has been no bad faith on the part of the plaintiff. In fact, plaintiff has done nothing but complied with requests. She has never sought to obfuscate or confound the parties during the discovery process. Plaintiff has made clear that she provided all the texts counsel refers to, to Amtrak during their supposed investigation of her complaint before the lawsuit was filed. She also provided texts that relate to the claims under the lawsuit, that is, sexual harassment and retaliation. The plaintiff was not under any obligation to provide text messages with anyone, even Amtrak employees, if it was not related to her claims. Granted, Ms. Vanceah may have forgotten that she spoke to say Al Canon about what Mr. Dendy was doing, but when she was shown the very text, which defendant's counsel had in their possession, she responded truthfully to defendant's counsel's inquiry.

"Inherent power sanctions 'vindicat[e] judicial authority without resort to the more drastic sanctions available for contempt of court.' " Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse 535 (6th ed. 2020) (*quoting Chambers v. NASCO, Inc.*, 501 U.S. 32 at 46 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). The imposition of sanctions pursuant to a court's inherent authority is truly discretionary. *See Murray v. City of Columbus*, 534 F. App'x 479, 485 (6th Cir. 2013) ("Because the court's inherent power to impose sanctions is discretionary, the court is not required to sanction a party or attorney even if it has determined that some wrongdoing has occurred."). Finally, the Supreme Court has made clear that courts should impose sanctions pursuant to their inherent authority only in rare circumstances. *See Chambers,* 501 U.S. at 44,

111 S.Ct. 2123 ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

In the discovery context, that discretion should be exercised with even more restraint than usual. Rules 26(g) and 37 "represent the principal enforcement power to punish discovery abuse." Joseph, Sanctions, at 558–59. Inherent power sanctions are thus not a primary mechanism by which a party can obtain relief for a discovery abuse: They should serve only as a useful backstop against discovery abuses that do not clearly violate Rules 26 (g) and 37.

Finally, although the Court "possess[es] the 'inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Mahoney v. Yamaha Motor Corp.* U.S.A., 290 F.R.D. 363, 367 (E.D.N.Y.2013) (*quoting Revson v. Cinque & Cinque,* 221 F.3d 71, 78 (2d Cir.2000)), the exercise of such power "requires the [movant] to present 'clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes.' " *Id.* (*quoting Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986)). In addition, before imposing sanctions under this authority, the Court must make a finding of bad faith based upon facts in the record containing a high degree of specificity. *See Gelicity UK Ltd. v. Jell–E–Bath, Inc.*, 10–cv–5677, 2013 U.S. Dist. LEXIS 186718, at *12–*13 (E.D.N.Y. Dec. 6, 2013) (Report and Recommendation), adopted by 2014 U.S. Dist. LEXIS 45573 (E.D.N.Y Mar. 31, 2014); *see also Arthur the Dog v. U.S. Merch. Inc.*, 05–cv–958, 2007 U.S. Dist. LEXIS 63885, at *32 (E.D.N.Y. Aug. 29, 2007) ("[I]n order to impose sanctions pursuant to its inherent power, the Court must find that counsel's behavior constituted or was tantamount to bad faith" (internal citations and quotation marks omitted)).

## CONCLUSION

Based on all of the foregoing, it is respectfully requested that the defendant's motion be denied in its entirety and for such other and further relief as this Court finds just and proper.

Dated: December 22, 2021

RENÉ MYATT, ESQ.