UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARJAY VANCEAH,

                                    Plaintiff,

– against –

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK *and*
TIMOTHY DENTY,

                                    Defendants.

**OPINION & ORDER**

18 Civ. 9418 (ER)

Ramos, D.J.:

        Marjay Vanceah brings this action alleging gender discrimination and retaliation against Defendants National Railroad Passenger Corporation ("Amtrak") and Timothy Dendy.[1]  Before the Court is Defendants' motion for sanctions pursuant to Federal Rules of Civil Procedure 37(c)(1) and 28 U.S.C. § 1927.  Defendants request that the Court sanction Vanceah and her counsel, Rene Myatt, Esq. ("Counsel"), for repeated discovery abuses by dismissing Plaintiff's claims with prejudice and awarding fees and costs.

        For the reasons set forth below, the motion to dismiss is GRANTED, but the Court will not award fees.

---

[1] Throughout the court documents Marjay Vanceah's last name is spelled both correctly, as "Vanceah," and incorrectly, as "Vanceach."  She filed suit under the latter name.  Additionally, Timothy "Dendy" was sued as Timothy "Denty."  The Court will use the correct names, Vanceah and Dendy, throughout.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Facts Giving Rise to the Complaint**

Marjay Vanceah began working for Amtrak as a coach cleaner on August 21, 2017.  Doc. 13 ¶ 1.  She was initially placed on a six-month probationary period, after successful completion of which she would become a full-fledged employee.  *Id*. ¶ 21.  Her boss was a carman and union representative named Timothy Dendy.  *Id*. ¶ 5.  Vanceah and Dendy's relationship is complicated, but it is at least not disputed that they exchanged personal text messages over a period of months, beginning while Vanceah was still in her probationary period, and had at least one sexual encounter.  Doc. 65-5; Doc. 34-3; Doc. 34-6; Doc. 1 ¶ 27.  Dendy was in charge of allocating employees overtime work, and assigned overtime to Vanceah, allegedly conditioned upon her continuing this relationship with him.  Doc. 1 ¶ 28.  The encounters that made up this relationship occurred both over text and in person.  At some point in Mid-December, 2017, Dendy sent Vanceah a picture of his penis via text message (the "Dendy photo").  *Id*. ¶ 30; Doc. 62 at 6.  And at an unknown date during her probationary period, he traveled to her home in Pennsylvania, where their sexual encounter occurred; Vanceah alleged in her initial complaint that, while it was occurring, she "pleaded with [Dendy] to stop."  Doc. 1 ¶ 27.  Dendy contends that it was consensual.  Doc. 48 at 1.  When Vanceah eventually rebuffed Dendy, he allegedly had her overtime hours cut completely.  Doc. 1 ¶ 31.

On February 22, 2018, once Vanceah completed her probationary period, she alerted Amtrak's ethics hotline about this relationship with and allegedly retaliatory treatment by Dendy (allegedly, she waited until this point in order to avoid further retaliation before she was a permanent employee).  *Id*. ¶ 32; Doc. 66 at 1; Doc. 65-2 at 4.  She provided the ethics office with 58 pages of text messages that they exchanged in support of her complaint.  Doc. 62 at 2.

Amtrak investigated internally, and although it did not take any concrete disciplinary steps against Dendy, it did solicit from Dendy screenshots taken from his own phone of the messages sent between him and Vanceah.  Defendants allege that the documents provided by Dendy paint a different picture.  For example, they provided messages sent from Vanceah to Dendy that she withheld in her own submission, "making it appear as if he sent her unsolicited texts," when in reality, they had a longstanding, mutually flirtatious relationship.  *Id*.  Subsequently, Vanceah registered a grievance with Shelton Gray, then a union representative, who did not officially file it because it had not been notarized.  Doc. 1 ¶ 34.  She complained separately on March 12, 2018 to the Amtrak Police Department about the same incident, though this investigation was also ultimately closed; the Department concluded her allegation of harassment could not be substantiated based on the information she provided, as she claimed her phone had been lost and thus that she could not provide further proof of the text messages.[2]  Doc. 65-2 at 6.  While it was investigating, the Department found that Vanceah had admitted that she and Dendy "were intimate with each other," that she had called Dendy "babes" over text and asked him to buy her underwear and perfume, and that they had engaged in "other mutual banter" in the messages as well.  Doc. 62 at 3 (citing Doc. 65-2).

## B. Procedural Background

The procedural history of this case is long and complicated, and the Court presents just those facts that are relevant for the instant motion for discovery sanctions.  Vanceah originally filed suit with the Equal Employment Opportunity Commission, and subsequently received a right to sue letter on July 25, 2018.  Doc. 1 ¶ 16.  She filed her initial complaint with this Court on October 15, 2018.  Doc. 1.  Vanceah filed two sets of initial disclosures on September 9 and

---

[2] Vanceah has given conflicting accounts about whether the phone was lost or stolen, as discussed below.  *See, e.g.,* Doc. 32 at 11:17; Doc. 65-12 at 1.

12, 2019, respectively.  Doc. 62 at 3.  Although she had previously given 58 pages to Amtrak's ethics office, the initial disclosure to the defendants contained only five pages of text messages, and the second, supplemental disclosure added only her EEOC complaint.  Doc. 62 at 3. Vanceah stated in her second disclosure that these documents constituted all the relevant materials in her possession.  Doc. 65-4.[3]

Vanceah initially responded to Amtrak's first set of interrogatories and first set of document requests on November 6, 2019 and November 23, 2019, respectively.  Amtrak alleges that her responses were deficient.  In her November 6, 2019 response to the request to provide all documents concerning the allegations in the complaint, and all documents reflecting her complaints of discrimination and harassment, Vanceah told Amtrak to "see attached documents," but did not actually attach any documents.  Doc. 62 at 4.  When asked in that same set of interrogatories to identify all mobile devices that Vanceah had used during the time of the alleged incident, Vanceah objected and did not provide the requested information.

Vanceah's November 23, 2019 responses to the first set of document requests were similarly deficient.  While Amtrak requested further documentation about the discrimination claims, the complaint filed with the police, the Dendy photo, communications Vanceah had with Dendy and other Amtrak employees, and all other relevant documents on which she intended to rely, all she wrote was that she was "not in possession of any documents responsive to this request" or that she had "previously produced" the relevant documentation, though she did not actually provide the documents that were requested.  *Id*. at 5; Doc. 65-7.  When asked to identify all mobile devices used during the relevant period, Vanceah again objected, contending that there was "no cause or good faith basis to call for the production of *all* mobile devices, *dates of use,*

---

[3] Vanceah argues in her opposition that Amtrak's initial request for the remainder of text messages on her cell phones was not specific enough and an attempt to humiliate her.  Doc. 66 at 3–4.

*each device*, unless someone is picking through the plaintiff's life."  Doc. 66 at 5 (emphasis in original).  The documents Vanceah purportedly failed to produce included:  documents relating to complaints made to Amtrak's HR Department, documents in support of Vanceah's federal complaint, all text messages relating to the allegation, the Dendy photo, and her mobile device for forensic examination.  Doc. 62 at 4–6.

Ultimately, Amtrak expressed their dissatisfaction with these responses to Vanceah's counsel in the first of their discovery deficiency letters, dated November 18, 2019.  Doc. 62 at 6.  They stated, *inter alia*, that (1) the responses were unverified, (2) the documents cited were not actually attached, and (3) she did not state any sufficient ground for objecting to identifying her cell phone.  *Id*.  On April 30, 2020, five months later, Vanceah supplemented her answers with further responses.  However, she again failed to attach any text messages, even though she wrote "[s]ee attached text messages." *Id*.  She did, however, affirmatively identify a single cell phone as the one used to communicate with Dendy during the relevant time period.   She then verified the responses on May 1, 2020, in a document notarized by her counsel.  Doc. 65-10.

Amtrak sent a second discovery deficiency letter on June 1, 2020 concerning Vanceah's supplemental replies.  Doc. 62 at 6.  They also asked her to confirm that she had searched for all documents and to explain why she had only provided the five pages of text messages and to explain if she had deleted any relevant information and, if so, why.  *Id*.  Vanceah thus further supplemented her responses on June 14, 2020.  In this supplemental response, she for the first time represented that she had two phones, one for personal use and one for business use.  She claimed that her business phone had contained additional texts with Dendy, but that it had been stolen and that the data was not backed up; that she had found no further messages between the parties on her personal cell phone and that that phone was not backed up; and that there had been

no text accompanying the Dendy photo.  Doc. 62 at 6–7.  As such, she stated that she had no other documents regarding Dendy and had provided every relevant document in her possession to the defendants.  *Id*.  Vanceah did produce texts between herself and Jennifer Montgomery, who was the Amtrak employee responsible for actually assigning overtime shifts, regarding her complaints about overtime and the retaliation.  Doc. 62 at 7; Doc. 65-2 at 4.

Dendy was first deposed on June 15, 2020.  In his deposition, he was shown a photo, ostensibly the Dendy photo, that had not yet been turned over to Amtrak's attorneys in discovery.  He denied that the penis in that photo was his, though he did not deny sending Vanceah a photo of his genitals.  Doc. 48 at 2.  He also stated that he had sent the picture in response to Vanceah sending him a picture "of her backside."  Doc. 67-9 at 70:7.  Vanceah's attorney provided defendants with the Dendy photo itself through discovery for the first time on June 23, 2020 via a file on Google Drive labeled "Picture of Denty's Penis005597.pdf," though it had no accompanying metadata from which to determine when and from where it had been sent. Doc. 62 at 7.

In the meantime, Vanceah moved on consent of all parties to extend the time to complete discovery on June 26, 2020, and this motion was granted on June 29, 2020.  Doc. 26.  On July 10, 2020, Amtrak sent a third discovery deficiency letter.  Doc. 62 at 7.  Since Vanceah at this point had alleged that only her business phone had been stolen, and it was still unclear how and when the photo had been transmitted and to which phone, Amtrak sought to inspect Vanceah's other, personal phone.  *Id*.  Although she had not yet identified any texts with Dendy regarding the photo, Vanceah called this a "fishing expedition" because the photo was not sent to her personal phone.  Doc. 66 at 9.  They also asked her to provide the number for her "stolen" business phone and asked whether she filed a police report regarding the theft.  Doc. 65-14 at 1.

Vanceah responded on July 29, 2020, calling the request to inspect her phone an assassination of character, reiterating that she had provided all available documents, and refusing to give her phone over to be inspected.  Doc. 65-15 at 1.  She also stated that there had been no written text accompanying the Dendy photo when it was sent.  Doc. 62 at 8.  Additionally, Vanceah accused Amtrak of being "insensitive to women and especially women of color."  Doc. 65-15 at 3.

On August 7, 2020, Amtrak filed a request for a pre-motion conference to raise discovery disputes.  Specifically, Amtrak asked to move to compel production of records concerning Vanceah's hours worked and alleged lost wages, records pertaining to emotional distress damages, and unemployment and medical records.  Vanceah replied that she would provide anything Amtrak requested.  Doc. 62 at 8.  Ultimately, multiple conferences regarding discovery and discovery sanctions were held by this Court.

On September 18, 2020, the first telephonic discovery hearing was conducted.  *Id.*  For the first time, Vanceah stated that she also was a real estate broker and used the business phone for her real estate business.  Doc. 62 at 10; Doc. 32 at 14:8–9.  The parties discussed the status of Vanceah's business phone, and Vanceah's counsel advised that it had been lost, not stolen, as Vanceah had most recently represented in her June 14 supplemental responses.  Doc. 65-16 at 11–12.  Still, Vanceah's counsel told the Court that she had turned over all the text messages she had between her and Dendy.  Doc. 32 at 9:7–8.  The Court therefore denied Amtrak's initial request for forensic analysis of Vanceah's phones, and ordered Vanceah turn over any additional documents or submit an affidavit confirming that she had none.  Doc. 62 at 9.

On September 30, 2020, Vanceah signed two affidavits in response to the Court's oral September 18 order.  Doc. 62 at 9.  The affidavits affirmed that Vanceah had two cell phones, one for personal use and one for business use; that the photo had been sent to her personal cell

phone and that there had been no personal communication with Dendy on the business phone (contrary to her response to Amtrak's third discovery deficiency letter, in which she represented that the photo was sent to her business phone); and that she was not in possession of anything else responsive to Amtrak's request, including any further text messages or other messages concerning the claims, that had not already been provided.  *Id.* at 10; Doc. 65-17.

Vanceah was deposed over four days, the first two of which occurred on November 10 and 18, 2020.  Doc. 66 at 12–14; Doc. 65-19.  At these first two depositions, Vanceah again contradicted the statements she had made in her affidavits.  She averred that she had spoken to Dendy on both phones and did not distinguish between them (contradicting her affidavits), that her business phone was stolen (not lost, as her counsel had previously stated), and that she did not have any photos or text messages from the stolen business phone backed up on iCloud, a cloud-based storage system that periodically backs up iPhone data.  Doc. 62 at 11.  She also stated that she had deleted screenshots of communications with Dendy *during* this litigation, and admitted that she had not produced all the text messages and emails that had been requested by Amtrak—indeed, she testified that she had "more than a hundred pages" of messages on her phone that she had provided to her own counsel but not to Amtrak.[4]  Doc. 65-19 at 246:10–17; Doc. 62 at 11.  Similarly, she stated that she had not produced all correspondence with Amtrak's human resources department regarding her complaint, only "the ones that bother [her] the most." Doc. 65-19 at 249:4–5.  However, she claimed that she was not being deceptive but rather that Amtrak was attempting to frame her as a liar and to confuse her, which is what led to these discrepancies.  Doc. 66 at 10–11.  By the same token, she admitted that she had been untruthful

---

[4] These admissions contradicted what she had stated in her responses to Amtrak's interrogatories and document requests, in her supplemental responses, in her response to Amtrak's third discovery deficiency letter, and in her attorney's representations to the Court in the September 18 conference.

in her affidavit when she stated that she had "conducted a good faith search for electronic

discovery and was not in possession of anything she had not already provided."  Doc. 62 at 12

(citing Doc. 65-19 at 253:20–254:19).

Amtrak consequently filed a letter on November 24, 2020 asking the Court for a pre-

motion conference, and renewed its request for a forensic examination of Vanceah's phones.

Doc. 62 at 12.  It also placed Vanceah on notice that it intended to seek sanctions based on

Vanceah's discovery responses, despite her attorney attesting to Amtrak's counsel on November

18, 2020 that her client had not deleted any relevant evidence and had not contradicted her

affidavits.  *Id*; Doc. 34.  Vanceah replied on November 29, 2020, objecting to this forensic

analysis and refusing to pay for it, though she maintained that the crux of the case was the

unsolicited Dendy photo.  Doc. 62 at 12; Doc. 34; Doc. 35.

Another telephonic hearing was held on December 4, 2020 regarding the renewed request

for forensic analysis.  Though Amtrak explained that Vanceah had deleted information from her

cell phone during the course of discovery, her attorney again told the Court—contrary to what

Vanceah admitted at her deposition—that her client had testified that this deletion had not

deleted any relevant texts from her phone during this litigation.  Doc. 62 at 13.  She also stated

that Vanceah had indeed sent Dendy a photograph of a woman's buttocks, but that it was a

"meme" and not intended to provoke him into sending the Dendy photo.  *Id*.  This time, the

Court ordered Vanceah to produce both phones for forensic analysis, and to pay for this analysis,

since her prior responses to Amtrak's discovery requests had been far too narrow and constantly

changing.  *Id*.; Doc. 38 at 9:13–19, 13:24.

While Vanceah produced both phones, one required repair before it could be examined,

so Amtrak moved on behalf of all parties for extension of time to complete discovery, which was

granted.  Doc. 41 at 1.  On December 28, 2020, Amtrak contracted with a third-party vendor,

Consilio, to examine the data on both phones.  Doc. 62 at 13–14.  Consilio completed its forensic

analysis[5] by January 28, 2021.  It found that Vanceah's business phone, which had only been in

use since January of 2020, had no record of communications with Dendy, even though Dendy

himself had produced text messages he had sent to that phone—suggesting Vanceah had deleted

those communications.  Doc. 65 ¶ 24.  It also found that Vanceah's personal phone contained

text messages between her and Dendy from December 14, 2017 to February 2, 2018 that

Vanceah had not produced in discovery.  *Id.*  The photo Dendy allegedly sent Vanceah was not

on either phone, and the forensic analysis did not reveal any evidence that it ever had been.[6]  *Id.*;

Doc. 69-1; Doc. 41 at 1.

The deposition of Vanceah resumed on April 13, 2021 and April 21, 2021.  As relevant to

this motion, at that time Vanceah stated that her complaint "wasn't about the picture," but about

Dendy "abusing his power" over her, Doc. 65-19 at 315:24–25, contradicting her reply to

Amtrak's request for forensic analysis of the phone, in which she said the photo was the crux of

the case.  She also contradicted her attorney's statement that the buttocks photo was a meme,

testifying at one point that she sent this photograph to Dendy in response to him asking for a

picture, and at another that she sent it accidentally, because she meant to send a photograph of

sneakers.  Doc. 62 at 13 n.13.  According to a letter sent by Dendy to the Court, Vanceah also

contradicted her initial complaint when she admitted that the sexual encounter between them in

---

[5] The forensic analysis consisted of a search of messages including texts and email sent to or from Vanceah, and third-party apps and social media on her device during various date ranges from August 1, 2017 to January of 2021. The criteria for the search consisted of all messages between Vanceah's two phones, messages between Vanceah and relevant parties, messages containing possible relevant language, and locations of photos sent to or received from Dendy.  Doc. 69-1.

[6] While the forensic analysis found no evidence of the Dendy photo on either phone, Dendy does "not deny he sent a photo . . . to plaintiff."  Doc. 48 at 2.

Pennsylvania had been consensual. Doc. 48 at 1. When questioned about the origin of the Dendy photo, Vanceah revealed that she did not know if the phone that had allegedly received the photo had been connected to iCloud. Doc. 62 at 14. She also stated, for the first time, that after filing her complaint in the instant case and during discovery, she brought her phone to an unspecified electronics store where she instructed an employee named "Josh" to retrieve the photograph based on a physical description. *Id*. She testified that she gave Josh her iCloud login information and instructed him to retrieve the photograph, but not to retrieve any text messages with Dendy or anything else responsive to Amtrak's discovery requests. Josh texted Vanceah the photo he allegedly retrieved, which she then deleted again after providing it to her counsel. *Id*. Lastly, Vanceah testified for the first time during her deposition that Dendy had actually sent her two photos of his genitals, but she only asked Josh to retrieve one photo because she felt it was enough. *Id*; Doc. 65-19 at 350:8–9. Vanceah's counsel contradicted her client's claims in her written opposition to the motion for discovery sanctions, stating that Vanceah did not delete the photo *during* the lawsuit, but rather that she only did so *before* its filing, once after Dendy initially sent it and again after Josh retrieved and sent her the photo. Doc. 66 at 18.

On April 23, 2021, another conference was held. Defendants told the Court that Vanceah had not ever served any notice of deposition on them, and that they were still waiting for certain records relating to damages. The Court held that all discovery should be completed by July 23, 2021. In the interim, Vanceah filed her Answer to Dendy's counterclaim, in which she denied, *inter alia*, that she had "urge[d] him to engage in a personal relationship with her" and that she had "lodg[ed] false claims of misconduct against" Dendy. Doc. 46 at 1; Doc. 16 at 4. On July 14, 2021, she moved for a conference regarding forensic analysis of Dendy's phone, so that the picture could be recovered from him, instead. Doc. 47. Dendy responded to this request the next

11

day, arguing that the request was a fishing expedition, that he was not under any obligation to preserve evidence, and that there was no need for the analysis because he did not deny sending the photo.  Doc. 48.  The Court granted the motion for conference, scheduling discussion of this issue for the case management conference scheduled for three months later, on July 23.  At the July 23, 2021 conference, the Court denied Vanceah's motion to compel a forensic analysis of Dendy's phone, since Dendy stated that he had the picture and would turn it over.  However, because expert discovery had not yet been completed (or even started), the Court delayed the end date for discovery once again to September 23, 2021.

On August 26, 2021, Amtrak sought a conference regarding its intention to move for sanctions against Vanceah and her counsel for repeated discovery malfeasance.  Doc. 50; Doc. 62 at 15.  Vanceah responded to this request on August 31, 2021.  She urged the Court not to grant the sanctions, arguing that she had already been punished for the same acts for which the sanctions were sought, such as through the over $16,000 she allegedly had to spend on the forensic analysis of her phones, and that she did not fabricate a photo and had provided the texts she did in good faith.  Doc. 52 at 2.  She further claimed that she only deleted evidence before the lawsuit was filed, directly contradicting her April 13, 2021 deposition testimony that she had deleted the photo when she was already represented by counsel, and recovered the photo and provided it to her counsel during the lawsuit.  Doc. 52 at 1; Doc. 62 at 15.

The conference was held on September 9, 2021.  The Court ordered Vanceah's counsel to look into her client's claims that an individual named Josh who worked at an electronics store had conducted an analysis of her phone.  Her counsel claimed that she had only learned of how Vanceah had obtained the PDF of the photo provided to Amtrak during her deposition.  Doc. 62

at 15.  The Court also ordered her counsel to provide the defendants information about Josh and his employer by or before September 16, 2021.  Doc. 57 at 15:4–5.

On September 16, 2021, Vanceah's counsel wrote to the Court concerning her efforts to locate Josh and the electronics store.  Doc. 53; Doc. 62 at 15.  While she had not been able to find a Josh at the address Vanceah had provided, she had discovered that the electronics store her client had allegedly used had closed, but had employed someone named Josh while it was operating, who now worked at a different store.  Doc. 65-22.  She provided defendants with Josh's phone number and the first name and phone number of the owner of the original store.  *Id*.

Amtrak then conducted their own search for Josh, ultimately finding that his name was actually Josue Rondau and that he worked at a different storefront, U R Wireless, for a different owner.  Doc. 62 at 15–16.  He was deposed on October 25, 2021.  Doc. 65-23.  Directly contradicting the representations Vanceah had made to the Court, Rondau testified that Vanceah never asked him to search the contents of her phone or iCloud account and that he never did so and never retrieved a photo of a man's penis from her account.  Doc. 62 at 16.  Indeed, he testified that performing data searches on a client's phone went against the company's policies. Doc. 65-23 at 23:21–24:3.  Instead, Rondau testified only that Vanceah asked him to "unlock" and "restore" her phone because she herself had "some information she need[ed] to retrieve," and that Vanceah did not ask him to "search through any photos on her phone to retrieve a certain photo for her."  *Id*. at 23:13–24:17.  Vanceah claims that Amtrak's counsel intimidated and threatened Rondau to elicit this testimony.  Doc. 66 at 19–20.

Finally, Amtrak moved for leave to file sanctions against Vanceah and her counsel on October 25, 2021, and was granted leave the next day.  Doc. 59; Doc. 60.  It filed for sanctions on November 23, 2021, citing the various discovery delays and violations discussed above.  Doc.

61.  On November 4, Dendy joined the motion filed by Amtrak seeking dismissal of Vanceah's lawsuit, at which point he would withdraw his counterclaims.  Doc. 64.[7]

## II.    LEGAL STANDARD

Under Rule 37(c)(1), a court may sanction a party that "fails to provide information . . . as required by Rule 26(a) or (e)."  Fed. R. Civ. P. 37(c)(1).  Under Rule 26(e), Plaintiff must supplement or correct the disclosure in its initial disclosures, response to an interrogatory, or request for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect ...; or [] as ordered by the Court."  Fed. R. Civ. P. 26(e)(1).  Courts may impose, *inter alia*, the following sanctions under Rule 37(c)(1) for violation of Rule 26(e):  imposition of attorneys' fees and costs expended, preclusion of the information at trial, or dismissal of the action in whole or in part.  Fed. R. Civ. P. 37(b)(2)(A)(iii)–(v); 37(c)(1)(A).  "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent."  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (internal quotation marks and citation omitted).  In selecting the appropriate sanction, the Court may consider the full record in the case.  *Abreu v. City of New York*, 208 F.R.D. 526, 529 (S.D.N.Y. 2002).

The relevant factors for determining whether a district court should exercise its broad discretion under Rule 37 are:  "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  *S.E.C. v. Setteducate*, 419 F. App'x 23, 24 (2d Cir. 2011) (citing *Agiwal v.*

---

[7] Dendy does not take a position on whether the Court should sanction Vanceah's counsel.  Doc. 64.

*Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).  "[T]hese factors are not exclusive,

and they need not each be resolved against the party challenging the district court's sanctions for

us to conclude that those sanctions were within the court's discretion."  *S. New England Tel. Co.*

*v. Global NAPs Inc*., 624 F.3d 123, 144 (2d Cir. 2010).

### III.   DISCUSSION

#### A. Sanctions

Amtrak requests the dismissal of Vanceah's complaint and an award of costs and fees.

*See* Doc. 62 at 1.  After two years of discovery delays occasioned by Vanceah and her counsel,

Amtrak claims sanctions are warranted under Rule 37, because Vanceah "withheld documents,

curated her productions, destroyed evidence, falsified affidavits and made contradictory

representations under oath."  *Id*.  The Court agrees.

First, although Vanceah's claim hinges in large part on allegedly harassing text messages

and the Dendy photo, her two sets of initial disclosures were supported with only five pages of

text messages between her and Dendy.  Doc. 62 at 3.  In contrast, Vanceah had provided the

Amtrak ethics office with 58 pages of texts between herself and Dendy when she first filed her

complaint with them.  Vanceah then served incomplete, unverified[8] responses to Amtrak's First

Set of Interrogatories and produced no documents in response to Amtrak's First Set of Document

Requests.  Doc. 62 at 3–4.  While Amtrak sent Vanceah a deficiency letter on November 18,

2019, noting her insufficient responses to their requests—in particular, that (1) the responses

were unverified, (2) the documents Vanceah cited were not actually attached, and (3) she did not

provide any basis for objecting to identifying her cell phones, Doc. 62 at 6; Doc. 65-8—Vanceah

did not respond until April 30, 2020, a delay of five months.  Doc. 62 at 6.  And this response

---

[8] Discovery responses should be verified by plaintiff's counsel to ensure that they are true and correct.  *See Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 379 (S.D.N.Y. 2011) (it is "require[d] that interrogatory responses be verified").

once again did not provide the requested documents, and was not verified until May 4, 2020.  *Id.*
Under Rule 26(e), Vanceah was required to promptly correct and supplement any insufficient
responses to Amtrak's discovery requests when notified by a deficiency letter.

Second, Vanceah's failure to preserve the text messages Dendy sent, and her shifting
explanations about her phones, her contradictory explanations of whether she deleted the other
communications, and her demonstrably false information about the forensic examination she had
done on her phone, are sanctionable.  Notably, although the Dendy photo is allegedly central to
Vanceah's case, she did not send Defendants a copy of what she claimed was the photo until
June 23, 2020, almost two years after the complaint was filed, and then only as a .pdf file sent
via Google Drive, with no surrounding metadata, context or accompanying text messages.
Subsequently, Vanceah claimed in her deposition that Dendy had sent two photos, but in
response to questioning about why she only produced one, said that she did not produce both
because she "felt like one picture [wa]s enough."  Doc. 62 at 14.  She also reported that after
receiving the photo from Josh and allegedly forwarding it to her counsel, she deleted it from her
phone once again.  At that point, the parties were in the midst of highly contentious discovery
disputes, and Vanceah was aware or should have been aware of the duty to preserve evidence.[9]
*Id.* at 6, 11, 14.

 Indeed, "while a litigant is under no duty to keep or retain every document in its
possession . . . it is under a duty to preserve what it knows, or reasonably should know, is
relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is
reasonably likely to be requested during discovery and/or is the subject of a pending discovery
request."  *Zubulake v. UBS Warburd LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (internal

---

[9] According to her deposition testimony, Vanceah allegedly initially deleted the Dendy photo because she needed to
clear up memory space on her phone.  Doc. 62 at 11.

quotation marks and citation omitted).  This duty to preserve extends to electronically-stored information, such as text messages.  *See Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60–61 (S.D.N.Y 2020) (holding the plaintiff had an obligation to preserve emails that had been deleted during discovery).  If her testimony is to be believed, Vanceah deleted the alleged photograph at the heart of her case not just once, but twice.  The *second* time she deleted the photo was after she filed the lawsuit and was represented by counsel.  Doc. 65-19 at 335:2–4.

Vanceah's direct contradiction of her affidavits during her deposition further demonstrates the recklessness with which she treated the discovery process.  Vanceah signed two affidavits in response to the Court's rulings on the parties' discovery disputes, which were prepared and notarized by her counsel.  Doc. 62 at 9.  The affidavits stated that she did not text Dendy on her business phone, that Dendy had sent the alleged photo to her personal phone, that she had conducted a good faith search through her electronic media and that nothing on her business phone was related to this claim.  *Id*. at 9–10.  However, Vanceah's testimony during her four days of deposition directly conflicted with the information she provided in the affidavits.  For example, Vanceah had previously provided information that she did in fact distinguish between her personal and business phones, only communicating with Dendy on the personal phone.  Doc. 62 at 10.  She had also previously stated that her business phone had been lost.  *Id.*  But over the first two days of the deposition, Vanceah testified that she did not, in fact, distinguish between her personal and business phones; that she communicated with Dendy using both phones; that her business phone had been stolen in December of 2017; that she took screenshots of her texts with Dendy and sent them from one phone to the other; that she was able to search her current phone for evidence; that her current phone contains more texts than she

produced during discovery; and that she withheld emails with Amtrak Human Resources regarding her internal complaint about Dendy, providing her counsel with only the texts that bothered her the most.  *Id.* at 10–12.

Where, as here, a plaintiff has engaged in repeated discovery abuses, dismissal is an appropriate sanction.  In *Setteducate*, 419 F. App'x at 25, the Second Circuit affirmed the imposition of default judgment against the defendant as a Rule 37 sanction in part because the defendant "failed to produce documents requested by" the plaintiff, even after the deadlines to do so were extended.  That case concerned the alleged fraud of investors out of millions of dollars by the defendant's company, Great American Technologies.  While the plaintiff requested documents relevant to that fraud, the defendant disobeyed two orders by the court to turn them over.  The court found it notable that the plaintiff filed a request for discovery extension three months after its initial request.  *Id*.  Here, Vanceah similarly refused to turn documents over to Amtrak.  Indeed, her refusal is arguably more egregious; rather than the three months between a request and extension request, Amtrak was forced to file three discovery deficiency letters over the course of eight months, from November 2019 to July 2020.  *See also S. New England Tel. Co.*, 624 F.3d at 140 (finding sanctions justified against a telecommunications service because it "failed over the course of *two years* to produce . . . records" (emphasis in original)).

In the face of this sorry record, Vanceah responds that she was justified in withholding certain categories of discovery.  She is wrong, and in any event, did not properly attempt to seek court intervention to prevent any purported abusive or burdensome discovery requests.  First, she alleges that the reason she submitted so few documents in her initial disclosure — only five pages of texts between her and Dendy — was because she found Amtrak's request overbroad, and a "fishing expedition" into her private life.  Doc. 66 at 3.  However, the requested

information, and especially the text messages produced in her internal complaints to Amtrak,

were relevant and necessary to the proper adjudication of this case.  Vanceah also incorrectly

claims that she did not believe that "other potential key evidence" requested by Amtrak extended

to the remainder of texts she had previously produced to Amtrak Police in her initial, internal

complaint.  Doc. 66 at 3; Doc. 62 at 3.  These texts were clearly relevant, particularly considering

that she framed the messages Dendy sent as the "basis" of her claims.  Doc. 35 at 1.

She further maintains that she did not believe there was a good faith basis to call for the

production of all her mobile devices.  *Id.* at 2.  Her deposition testimony proves the relevancy of

that request:  she testified that she communicated with Dendy on both phones.  Similarly,

Vanceah did not produce any documents after receiving Amtrak's First Set of Document

Requests, which she alleged was due to a misunderstanding; the only document that her counsel

felt was appropriate to produce was Dendy photo.  Doc. 62 at 3–5; Doc. 66 at 6.  Vanceah's

explanation for deleting the Dendy photo—that the photo was "disgusting"—is plainly

unreasonable in the context of a gender discrimination case in federal court.

At this juncture, then, these excuses are unacceptable, particularly where, as here, the

Court has already sanctioned Vanceah and ordered her and her counsel more than once to

comply with their discovery obligations.  These orders stem from the parties' debate over

forensic analysis of Vanceah's phone:  after the Court denied Amtrak's initial request for

forensic analysis, relying on Vanceah's counsel's representation that she had provided all

relevant texts, Amtrak alerted the Court that they still had not received the text messages that

Vanceah had placed at the center of her complaint.  Doc. 38 at 3:13–14.  Amtrak had received

two sworn affidavits drafted by Vanceah's counsel stating she had provided everything that

existed; however, in Vanceah's deposition, they learned that Vanceah "was able to scroll through

her phone at that moment and confirm that there were more messages." *Id.* at 4:12–13.  The Court thus required Vanceah to provide the phone and required that she pay for the forensic examination. *Id.* at 9:16–19.

The Court was also forced to direct Vanceah's counsel to find and turn over information regarding the purported forensic examination Vanceah had done on her phone.  Doc. 57 at 12:11–12.  It was only Amtrak's independent investigation of Vanceah's account that resulted in the identification of Josue Rondau, the individual that purportedly conducted the forensic analysis of her phone.  To put it mildly, his deposition testimony did not support her account in any regard.  Instead, he testified that she did not ask him to conduct a search of her phone, but rather to unlock and restore her phone.

In short, Vanceah and her counsel were made aware of her non-compliance again and again and failed to produce plainly relevant materials.  Indeed, even Vanceah's opposition to the instant motion is riddled with unwarranted accusations in an attempt to divert attention from the relevant issues, such as that Amtrak has painted Vanceah as a "sexualized liar" and treated her like a "rape victim."  Doc. 68 at 2; Doc. 66 at 2–3.  Still, Vanceah argues that a prerequisite of Rule 37 has not been met and that sanctions are therefore inappropriate.  Relying on *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir.1991),[10] Vanceah alleges that a court may impose Rule 37 sanctions only when the transgressing party has violated a prior court order, which she says she has not.  Doc. 66 at 21.  Amtrak replies that they have met that element because Vanceah breached the "December 12, 2019 Civil Case Discovery Plan and

---

[10] In *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, the court reversed in part the imposition of severe sanctions on one plaintiff because they had not been subject to a court order, only to a subpoena duces tecum, but imposed sanctions on the other plaintiff because of its repeated failure to respond to unequivocal court order requiring document and witness production for deposition.  *Daval Steel Prods.*, 951 F.2d at 1366–68.

Scheduling Order requiring production of timely, complete and accurate discovery responses."
Doc. 68 at 8–9.

Vanceah's claim that she did not violate this order is premised on the notion that she has
provided Amtrak with all of the documents or texts that she has in her possession.  Doc. 66 at 21.
It is abundantly clear that this is not the case.  The Court finds that Vanceah repeatedly failed to
comply with her disclosure obligations and the Court's orders, and that the requirements for a
discretionary sanction are met here.  Over two-and-a-half years, six discovery-related Court
conferences and several letters, Vanceah has refused to produce and likely destroyed relevant
documents, lied about her cell phones, lied about the forensic examination she had purportedly
conducted on her phone, and baselessly accused her adversaries of racism and sexism.  She has
contradicted herself and made it nearly impossible for Amtrak to develop a full understanding of
the facts that underlie her claims.  Considering the factors relevant to a Rule 37 violation, then,
the Court is convinced that Vanceah has engaged in willful non-compliance.  And Vanceah has
been warned more than once about the consequences of non-compliance.

A district court may use its inherent power to sanction a plaintiff by dismissing her case
with prejudice, *Shepherd v. Annucci*, 921 F.3d 89, 98 (2d Cir. 2019), or by imposing monetary
sanctions against a party or her counsel.  *International Technologies Marketing, Inc. v. Verint
Systems, Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021).  "Because of its potency, however, a court's
inherent power must be exercised with restraint and discretion."  *Id*. at 368 (quoting *Chambers v.
NASCO, Inc.*, 501 U.S. 32, 44 (1991)).  Certain restraints have been put on the courts to that end:
before a court may invoke its inherent power to sanction, the party facing sanctions must be
provided with "adequate notice and opportunity to be heard."  *Shepherd*, 921 F.3d at 97.  When
the sanction is dismissal with prejudice, it must be supported by "clear evidence of misconduct

and a high degree of specificity in the factual findings." *Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (internal quotation marks and citations omitted).  The Court must find "willfulness, bad faith, or reasonably serious fault," *id.* (citation omitted), and must also consider "whether a lesser sanction would [be] appropriate," *Shepherd*, 921 F.3d at 98 (citation omitted).

In *In re Anderson*, No. 14-22147 (RDD), 2022 WL 1926608, at *2 (Bankr. S.D.N.Y. June 3, 2022), the court found the sanction of a default judgment under Rule 37 to be appropriate, in part because of the "submission of false affidavits" on the part of Credit One Bank.  Plaintiff had brought suit against the bank on behalf of himself and a putative class due to the bank's refusal to report that a debt had been charged off.  When the bank repeatedly lied in depositions, affidavits, and representations to the court about responses to document requests and other actions it had taken that were relevant to the proceedings, the court determined that the severe sanction of entering a default judgment against the bank was appropriate.  So too here, Vanceah's contradictory affidavits and testimony concern facts that are central to the case—whether the Dendy photo was sent as part of a consensual personal relationship between Vanceah and Dendy or something more nefarious.  Thus, whether there were more text messages between them could clearly impact the determination of whether she was subject to discrimination or retaliation.  Vanceah has made that determination impossible as a practical matter because the Court can have no confidence that all relevant communications have been produced.

In *Shepherd*, the plaintiff was a pro se litigant whose complaint was dismissed with prejudice as a sanction because he had misrepresented his litigation history.  He had alleged that, during his time in a New York State prison, the department of corrections had not accommodated

his disability, and had refused to treat and exacerbated his injuries.  The Second Circuit affirmed

the dismissal, finding that the plaintiff's claims were "without foundation" and "contradictory."

*Shepherd*, 921 F.3d at 96–97 (internal quotation marks and citations omitted).  Though it made

clear that this sanction was a serious one, it found that it was appropriate, given the bad faith

with which the plaintiff acted and the repetitive nature of those actions.  *Id.* at 98.

   In similar cases, courts in this District have found dismissal warranted where the plaintiff

fabricated evidence during the discovery process.  In *Rossbach v. Montefiore Medical Center*,

No. 19 Civ. 5758 (DLC), 2021 WL 3421569 at *1–*3 (S.D.N.Y. Aug. 5, 2021), plaintiff alleged

that she had been the subject of sexual harassment by her supervisor.  Like here, she produced

text messages sent to her by her supervisor that were ultimately found to be inaccurate (although

in *Rossbach*, they were completely fabricated).  And, as in the instant case, she contradicted

herself multiple times as to why she had provided these inaccurate texts.  Judge Cote held that

this willful, bad faith fabrication of evidence indicated that a sanction of "dismissal . . . is

warranted as an exercise of this Court's inherent power to sanction and deter fraud on the Court."

*Id.* at 6.

   Vanceah purposely withheld documents for months and contradicted herself in written

submissions to the Court and in her affidavits.  While the Court does not reach the issue of

whether Vanceah went so far as to fabricate any text messages from whole cloth as was the case

in *Rossbach*, she has engaged in multiple different but analogous discovery violations, including

deletion and withholding of relevant evidence, providing misleading affidavits, and failure to

correct false information.  In the aggregate, these violations show Vanceah's willful and bad

faith noncompliance with the discovery process, and warrant dismissal.

### B. Attorneys' Fees

In addition to seeking sanctions, Amtrak also asks the Court to "award Amtrak its reasonable attorneys' fees and costs." Doc. 68 at 10. This request is denied. "[T]he decision to award fees rests in the court's equitable discretion." *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 147 (2d Cir. 2001); *see also Weitzman v. Stein*, 98 F.3d 717, 720 (2d Cir. 1996) ("trial courts enjoy considerable discretion in determining the appropriate amount of attorney fees" (citation omitted)); *Casale v. Kelly*, 710 F. Supp. 2d 347, 367 (S.D.N.Y. 2010) ("[a] court may award appropriate attorney fees and costs to a victim of contempt." (quotation marks omitted)). "A sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Am. Honda Motor Co. v. V.M. Paolozzi Imports, Inc.*, No. 7:10 Civ. 955 (FJS) (ATB), 2013 WL 1296421, at *6 (N.D.N.Y. Mar. 26, 2013) (alteration omitted) (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 673 F.2d 53, 56 (2d Cir. 1982)).

Amtrak does not request a specific amount in fees, it states that it will submit a declaration detailing its fees and costs if the Court finds monetary relief appropriate, and simply cites to cases in which fees were awarded. *See, e.g.,* Doc. 68 at 10 (citing *ComLab, Corp. v. Tire*, 815 F. App'x 597 (2d Cir. 2020)). In *ComLab*, an IT services provider was sanctioned for discovery violations in the case it had filed against a company for breaching their computer services contract. The case was dismissed with prejudice and the company was awarded fees, and the court noted that even though "a lesser sanction may have effectively nullified the prejudice . . . caused to [defendant], [courts] have recognized the appropriateness of harsher

sanctions to penalize those whose conduct may be deemed to warrant" them. *ComLab*, 815 F.

App'x at 602 (internal quotation marks and citations omitted).

Considering that awarding fees is within a court's equitable discretion, the Court finds

that the sanction of dismissal suffices.  First, dismissal prevents Vanceah from being able to

pursue her claim.  So, attorneys' fees are not necessary to nullify the prejudice, as the Second

Circuit suggests in *ComLab* that sanctions are meant to do.

Indeed, many of the reasons for which Amtrak suggests that this additional monetary

penalty is appropriate are the same reasons they cite in support of the sanction of dismissal:  that

she committed "pervasive discovery abuses," that she "withheld documents," and that she

"willful[ly] destr[oyed] . . . the only evidence that could substantiate" her claims.  Doc. 62 at 25;

*see Lawrence v. City of New York*, No. 15 Civ. 8947 (WHP), 2018 WL 3611963, at *8 (S.D.N.Y.

July 27, 2018) (granting a sanction of dismissal but denying a sanction of attorneys' fees because

it found that dismissal alone was "the appropriate sanction that offers the closure that Defendants

have earned" without being overly punitive).

Equity also counsels against the imposition of fees.  Amtrak is a corporation 100%

whose preferred stock is owned by the United States government—109,396,994 shares at $100

par value.  Doc. 14 ¶ 3.  In contrast, Vanceah has worked as a coach cleaner and hairdresser.

Doc. 66 at 1; Doc. 34-1.  While not discounting the severity of her discovery abuses, the Court

finds it unnecessary to require Vanceah to pay Amtrak's attorneys' fees, especially considering

that it already required her to pay approximately $16,000 for the forensic analysis of her phones.

Doc. 52.  *See also Serrano v. Shield Inst. of David, Inc*., No. 94 Civ. 6745 (MBM), 1997 WL

167042, at *6 (S.D.N.Y. Apr. 9, 1997) ("[b]efore awarding attorney's fees, a court should take

into account the financial circumstances of the party to be sanctioned.")*; Oliveri v. Thompson*,

803 F.2d 1265, 1281 (2d Cir. 1986) ("it lies well within the district court's discretion to temper

the amount to be awarded against an offending [party] by a balancing consideration of his ability

to pay"); *Lawrence*, 2018 WL 3611963, at *8 (denying the attorneys' fees sanction because of

the parties' relative financial circumstances).

Lastly, Amtrak also asks that attorneys' fees also be assessed against Vanceah's attorney,

René Myatt, pursuant to 28 U.S.C. § 1927. This request is also denied. Sanctions "against

counsel who willfully abuse judicial processes . . . are within a court's powers." *Roadway Exp.,*

*Inc. v. Piper*, 447 U.S. 752, 766–67 (1980). However, these sanctions "should not be assessed

lightly." *Id.* at 767. The record of discovery violations and delays in this case at the very least

suggest that counsel was less than diligent in directing her client to identify, preserve, and

produce relevant evidence. However, nothing before the Court suggests that counsel engaged in

anything other than zealous, if perhaps misguided advocacy.

## IV. CONCLUSION

For the reasons stated above, Amtrak's motion is GRANTED. The Court dismisses all of

Vanceah's claims with prejudice. The Clerk of Court is respectfully directed to terminate the

motions, Docs. 61 and 62, and to close the case.


It is SO ORDERED.


Dated:  August 1, 2022
New York, New York

_____
                              Edgardo Ramos, U.S.D.J.